UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**KELSEY FRASER,**
Plaintiff

Case No.
Hon.

v.

**GERALD R. FORD JOB CORPS CENTER, HUMAN LEARNING SYSTEMS, and CHRIS SMITH, CYNTHIA OWENS, LATONYA CAIN, and BRIAN BURNETT**
Defendants.

---

Law Offices of Ward & Stachurski, PLLC
Veronica L. Stachurski (P85110)
*Attorneys for Plaintiff*
7743 Grand River Ave.
Suite 103
Brighton, MI 48114
(517) 347-8100
Office@WSadvocates.com

---

# COMPLAINT AND JURY DEMAND

This is an original proceeding; there is no pending or resolved civil action arising out of the transaction or occurrence alleged in this Complaint. This is not a class action lawsuit.

NOW COMES Plaintiff, Kelsey Fraser, by and through her attorneys, Law Offices of Ward & Stachurski, PLLC, to hereby timely file her Complaint and Jury Demand. In support of her Complaint, Plaintiff states the following:

## PARTIES, JURISDICTION, AND VENUE

1. This is an action for unlawful discrimination and retaliation in violation of Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*., ("ADA") the Persons with Disabilities Civil Rights Act ("PDCRA"), MCL 37.1101 *et seq*., as well as a hostile work environment in violation of the ADA and the PDCRA.
2. Plaintiff, Kelsey Fraser, is a citizen of Kent County, in the State of Michigan, in the United States of America.
3. To the best of Plaintiff's knowledge and information, Defendant Human Learning Systems (Defendant Employer) is a registered business operating in the State of Michigan, and with a principal place of business at 110 Hall St. SE, Grand Rapids, MI 49507, which is located in Kent County, Michigan.

4. To the best of Plaintiff's knowledge and information, Defendant Chris Smith works and resides in Grand Rapids, Kent County, Michigan.

5. To the best of Plaintiff's knowledge and information, Defendant Cynthia Owens works and resides in Grand Rapids, Kent County, Michigan.

6. To the best of Plaintiff's knowledge and information, Defendant Latonya Cain works and resides in Grand Rapids, Kent County, Michigan.

7. To the best of Plaintiff's knowledge and information, Defendant Brian Burnett is the Director of Gerald R. Ford Job Corps Center in Grand Rapids, Michigan therefore works in Kent County, Michigan.

8. Defendant Employer employs 200 or more individuals and is a covered entity as defined by the ADA.

9. Defendant Employer is also an employer as defined by the PDCRA.

10. Jurisdiction is proper in this court under 28 U.S.C. § 1331, which authorizes federal courts to decide cases concerning federal questions. Jurisdiction is also conferred by 28 U.S.C. § 1343(a)(3) and (4). Additionally, this federal court has jurisdiction in this case pursuant to 28 U.S.C. § 1367, which authorizes federal courts to exercise

supplemental jurisdiction over state-law claims arising from the same core operative facts.

11. Venue is proper because the Defendants' principal place of business, and the majority of the events alleged in this Complaint took place in the Western District of Michigan, in Kent County, Michigan.

## COMMON ALLEGATIONS

12. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

13. At all times relevant to this Complaint, Plaintiff was employed by Defendant Employer.

14. When the events giving rise to this complaint occurred, all individually named defendants were employed by Defendant Employer and acting in the scope of their employment.

15. At all times material to this Complaint, Defendants Smith, Owens, Cain, and Burnett worked for Defendant Employer.

16. Defendants Smith, Owens, Cain, and Burnett maintained positions within Defendant Employer's organization that caused them to have

power and/or control over Plaintiff's working conditions, arrangements, requested accommodations, as well as maintain control and authority to take employment actions against Plaintiff.

17. Defendants Smith, Owens, Cain, and Burnett had the authority to control workplace restrictions, up to and including causing investigations and terminating Plaintiff's employment.

a. Defendant Smith maintained direct oversight over Plaintiff as an SGA, including but not limited to, Defendant Smith having power and control over the projects assigned to Plaintiff, Plaintiff's work duties, and whether Plaintiff received project assignments.

b. Defendant Owens was also in a position of authority and control over Plaintiff, including the ability to discipline Plaintiff.

c. Defendant Cain had the authority and control to take adverse actions against Plaintiff, including disciplining Plaintiff for using her accommodations, as well as terminating Plaintiff's employment.

d. Defendant Cain was also in a position to have taken action when Plaintiff reported instances and harassment and discrimination.

However, Defendant Cain intentionally refused to take any action against those mistreating Plaintiff.

18. Defendants Smith, Owens, Cain, and Burnett were predisposed to treat Plaintiff differently and worse because she has a disability and requested accommodations.

19. Defendants Smith, Owens, Cain, and Burnett collaborated to create a toxic and hostile working environment for Plaintiff because of her status as a disabled individual.

20. Defendants intentionally created an environment for Plaintiff where, as a victim of harassment, she had no effective course to complain about mistreatment by supervisors.

    a. Plaintiff submitted numerous complaints about Defendants Smith and Owens before her unlawful termination. However, it was Defendants Smith and Owens who would have been responsible for passing Plaintiff's complaints to a higher supervisor when Plaintiff made those complaints.

    b. Defendants Smith and Owens continued to harass Plaintiff without repercussion. When Plaintiff did attempt to take a

complaint to HR or Director Brian Burnett, she was ignored and suffered adverse employment actions.

21. Defendant Employer has an admitted pattern and practice of refusing to address Plaintiff's complaints of mistreatment until they reach the level of a formal complaint filed by Plaintiff in an agency proceeding.

22. Defendants refused to accommodate Plaintiff until forced to do so by the EEOC. Even after that, Defendants only nominally provided accommodations, having put them in place in writing, but disciplined Plaintiff when she used the accommodations promised to her.

23. Defendant Employer employs a minimum of 100 employees at the Center located in Grand Rapids, Michigan.

24. Plaintiff exhausted all required administrative remedies prior to the filing of this lawsuit.

## FACTS AND PROCEDURAL HISTORY

25. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

26. Plaintiff began working for Defendant Employer in or around March of 2022 as an Administrative Assistant.

27. At all times material to this Complaint, Plaintiff exceeded expectations in performing her job duties and excelled in the position(s) she held.

28. As evidence of her ability to perform her duties, Plaintiff earned a promotion to SGA/Leadership Specailist in June 2022, less than three months after she started her career with Defendants.

29. However, Plaintiff suffered from disabilities and requested reasonable accommodations from Defendant Employer in or around July 2022.

30. Plaintiff attempted to engage in the process/procedure to obtain reasonable accommodations, but Defendants refused to engage in the accommodation process.

31. Therefore, Plaintiff filed a Charge with the EEOC regarding Defendants' conduct.

32. As a result of filing this Charge, Plaintiff was able to secure written confirmation that she would receive accommodations.

33. However, despite this binding commitment, Defendants continued to refuse to provide the accommodations that they promised to Plaintiff.

**Plaintiff's history of filing complaints regarding the discrimination and harassment she faced.**

34. Between 2022 and 2023, Plaintiff filed at least one Charge of Discrimination with the EEOC to complain about the harassment and retaliation she suffered at the hands of Defendants.

35. Between September and October 2022, Plaintiff engaged in the process with her employer to attempt to obtain reasonable accommodations.

36. However, despite Defendants' continued promises to give Plaintiff accommodations, Plaintiff continued to be disciplined and discriminated against on the basis of her disabilities and requests for reasonable accommodations.

37. Therefore, after months of suffering, Plaintiff filed a Charge of Discrimination in or around 2022.

38. As a result of this Charge, Defendants were bound to provide accommodations to Plaintiff.

39. Unfortunately, the accommodations Plaintiff was able to secure through the EEOC process were in writing only, as Defendants never effectively implemented the accommodations they promised.

**Defendants' intentional subjugation of Plaintiff and creation of a hostile working environment.**

40. During this time, Plaintiff would attempt to take advantage of her promised accommodation, such as her ability to work beginning in the afternoon, and her supervisors would harass, intimidate, and belittle her for arriving at work "late."

41. Despite the promise that this would be an accommodation for Plaintiff, she still suffered adverse employment actions and harassment from Defendants when she used her accommodations.

42. During this time, Plaintiff suffered severe harassment and retaliation from her supervisors when she used her accommodations.

    a. This includes, but is not limited to, Defendant Smith yelling at Plaintiff in front of her students and causing Plaintiff to cry because of the extreme and discriminatory comments that he made toward Plaintiff.

43. When Plaintiff reported this conduct to HR, Defendants intentionally ignored Plaintiff's reports and/or refused to take any remedial action against the persons engaging in the discriminatory and retaliatory conduct.

44. Also during this time, Plaintiff was demoted from her managerial team position and was stripped of responsibilities that were once hers.

    a. At no time did Defendants accuse or report to Plaintiff that she was failing to perform her job duties in a satisfactory manner.

45. Plaintiff was demoted because she continued to use her reasonable accommodations and because she engaged in the protected activity of reporting people who discriminated against, and harassed her.

46. In or around September 2024, Plaintiff reported that her supervisors, including Defendants Smith and Owens, continued to discuss her medical conditions in front of Plaintiff's students, and that Defendants Smith and Owens mocked Plaintiff for her conditions in front of Plaintiff's students.

    a. Despite Plaintiff's reports to Defendant Employer and HR, Defendants refused to act or remediate the situation.

47. There was a continued pattern and practice of belittling, mocking, and harassing Plaintiff in front of students, coworkers, and parents/guests based on Plaintiff's medical conditions and disabilities.

    a. Defendants Smith and Owens were the most consistent perpetrators of this conduct, which was reported to HR and Defendant Cain.

    b. However, neither Defendant Cain, nor Defendant Employer did anything about the harassment and mistreatment of Plaintiff.

48. In November 2024, Defendant Burnett retaliated against Plaintiff for working remotely and using her accommodation to start work later in the day by disciplining her and removing her from participation in the City Commission meeting.

49. In or around December 2024, Defendants Smith and Owens mocked Plaintiff on the basis of her medical conditions and disabilities in front of Plaintiff's students, including disparaging her and calling her names in front of these students.

50. Plaintiff reported this to Defendant Cain or others in HR, but no action was taken.

51. Between December 2024 and June 2025, Defendants collaborated and conspired to single Plaintiff out and discipline or remove her from her program duties. This includes, but may not be limited to

a. Defendant Burnett cancelling multiple meetings with SGAs so that Plaintiff could not attend the meetings;

b. Defendants Smith, Owens, and Burnett collaborating to ensure that Plaintiff received her first ever evaluation after 3 years with the company, and to falsely diminish Plaintiff's rating as punishment for her protected activities and/or because she is disabled and requested accommodations;

c. Plaintiff was singled out and audited by staff members of Human Learning Systems who are not usually at the work location, at the prompting of Defendants to attempt to cause her to be fired;

d. Defendant Smith yelled and cursed at Plaintiff's students, telling the students that "Plaintiff doesn't do shit!";

52. Defendant Cain had substantial information and proof that employees were engaged in unlawful activity, which was reported by Plaintiff.

53. However, Defendant Cain intentionally refused to take any action against Plaintiff's harassers and instead opened an "investigation" against Plaintiff.

54. Plaintiff was informed of this alleged investigation on Friday, June 6, 2025, less than one business day before she terminated, on Monday, June 9, 2025.

55. Defendant Cain, either alone or in concert with every other Defendant, created this farce of an investigation to find an excuse to terminate Plaintiff's employment.

    a. Defendants did terminate Plaintiff's employment on or about June 9, 2025.

56. The alleged reason for Plaintiff's termination was predicated on a post on a social media platform.

    a. However, comparative employees who are not disabled were known by Defendants to engage in that same activity, but never received any adverse employment action.

57. Any attempt by Defendant Employer to justify firing Plaintiff is purely pretextual.

## COUNT I – UNLAWFUL DISCRIMINATION IN VIOLATION OF THE ADA

58. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

59. Defendant Employer is a covered entity as defined by the ADA.

60. Plaintiff is a disabled person within the meaning of the ADA.

61. Plaintiff was at all material times qualified for her position(s) with or without reasonable accommodation(s).

62. Plaintiff suffered adverse employment actions, as described herein, including but not necessarily limited to, her demotion, and her termination from employment on or about June 5, 2025.

63. Defendants' adverse actions against Plaintiff were taken because of Plaintiff's disabilities.

64. The conduct of Defendants described throughout this Complaint, constitute unlawful discriminatory acts against Plaintiff, which were taken because of Plaintiff's disabilities.

65. Defendants' actions were intentional, with reckless indifference to Plaintiff's rights.

66. Defendants would not have acted in this unlawful manner if Plaintiff was not disabled.

67. As a direct and proximate result of Defendants' unlawful actions against Plaintiff as described, Plaintiff has sustained injuries and damages, including, but not limited to, loss of career opportunities; mental and emotional distress; and loss of reputation and esteem in the community.

## COUNT II – UNLAWFUL DISCRIMINATION IN VIOLATION OF THE PDCRA

68. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

69. Defendant Employer is an Employer as defined by the PDCRA.

70. Plaintiff is disabled as defined by the PDCRA.

71. Plaintiff's disabilities were unrelated to, and did not affect her ability to perform her particular job(s) and position(s).

72. The conduct of Defendants described throughout this Complaint, constitute unlawful discriminatory acts against Plaintiff, which were taken because of Plaintiff's disability.

73. Such actions were intentionally committed by Defendants against Plaintiff with reckless indifference to Plaintiff's rights.

74. Defendants would not have acted in this unlawful manner if Plaintiff was not disabled.

75. As a direct and proximate result of Defendants' unlawful actions against Plaintiff as described, Plaintiff has sustained injuries and damages, including, but not limited to, loss of career opportunities; mental and emotional distress; and loss of reputation and esteem in the community.

**COUNT III – UNLAWFUL RETALIATION IN VIOLATION OF THE ADA**

76. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

77. Plaintiff engaged in protected activities while employed by Defendants, including but not necessarily limited to, complaints and charges of discrimination with the EEOC; requests for reasonable accommodations; and reports to supervisor(s) that she was being discriminated and retaliated against.

78. Plaintiff suffered adverse actions in her employment, including but not necessarily limited to, her demotion(s), discipline when

attempting to perform her job under the accommodations she was told she was granted, and her termination from employment.

79. The adverse actions taken against Plaintiff were a direct and proximate result of plaintiff engaging in protected activities.

    a. In fact, Defendants referred to Plaintiff as retaliating against them by the very act of submitting a complaint of harassment. Defendant Employer even explicitly referred to Plaintiff as having retaliated against it by filing a charge of discrimination with the EEOC.

    b. This is direct evidence of adverse actions taken against Plaintiff for engaging in protected activities.

80. Defendants also engaged in coercion, aiding, abetting, and/or collaborating with each other to retaliate against Plaintiff because of her protected activities.

81. Defendants' actions were intentional, with reckless indifference to Plaintiff's rights.

82. Defendants would not have acted in this retaliatory manner if Plaintiff did not engage in protected activities.

83. As a direct and proximate result of Defendants' unlawful actions against Plaintiff as described, Plaintiff has sustained injuries and damages, including, but not limited to, loss of career opportunities; mental and emotional distress; and loss of reputation and esteem in the community.

## COUNT IV – UNLAWFUL RETALIATION IN VIOLATION OF THE PDCRA

84. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

85. Plaintiff engaged in protected activities while employed by Defendants, including but not necessarily limited to, complaints and charges of discrimination with the EEOC; requests for reasonable accommodations; and reports to supervisor(s) that she was being discriminated and retaliated against.

86. Plaintiff suffered adverse actions in her employment, including but not necessarily limited to, her demotion(s), discipline when attempting to perform her job under the accommodations she was told she was granted, and her termination from employment.

87. The adverse actions taken against Plaintiff were a direct and proximate result of plaintiff engaging in protected activities.

88. Defendants also engaged in coercion, aiding, abetting, and/or collaborating with each other to retaliate against Plaintiff because of her protected activities.

89. Defendants' actions were intentional, with reckless indifference to Plaintiff's rights.

90. Defendants would not have acted in this retaliatory manner if Plaintiff did not engage in protected activities.

91. As a direct and proximate result of Defendants' unlawful actions against Plaintiff as described, Plaintiff has sustained injuries and damages, including, but not limited to, loss of career opportunities; mental and emotional distress; and loss of reputation and esteem in the community.

## COUNTS V & VI – HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE ADA AND PDCRA

92. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

93. Defendants engaged in intentionally severe, pervasive, and egregious conduct to cause a hostile working environment for Plaintiff.

94. The conduct of Defendants was so severe and pervasive that it caused a substantial alteration of the conditions of Plaintiff's employment.

95. Defendants' conduct was because of, arose out of, and intentionally perpetrated because of Plaintiff's disabilities.

96. As a direct and proximate result of Defendants' unlawful actions against Plaintiff as described, Plaintiff has sustained injuries and damages, including, but not limited to, loss of career opportunities; mental and emotional distress; and loss of reputation and esteem in the community.

## RELIEF REQUESTED

WHEREFORE, Plaintiff, having been deprived of her rights in violation of the ADA, the PDCRA, and having been caused to endure a hostile working environment, hereby requests this Honorable Court award her the following relief:

1. Damages for the emotional distress, mental anguish, embarrassment and humiliation;
2. Economic damages to compensate Plaintiff for any loss of wages, loss of earning capacity, loss of earning potential;
3. Award Plaintiff punitive damages to the fullest extent allowable under the law due to the blatant disregard Defendants demonstrated for Plaintiff's rights under the ADA;
4. Reasonable attorney fees and costs;
5. Any other legal or equitable relief that Plaintiff is entitled to as a matter of law.

[SIGNATURES ON NEXT PAGE]

Respectfully submitted,

Dated: October 09, 2026

/s/ *Veronica L. Stachurski*

Veronica L. Stachurski (P85110)
Attorney for Plaintiff
Law Offices of Ward & Stachurski, PLLC
7743 Grand River Ave., Suite 103
Brighton, Michigan 48114
(517) 347-8100

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**KELSEY FRASER,**
Plaintiff

Case No.
Hon.

v.

**GERALD R. FORD JOB CORPS CENTER, HUMAN LEARNING SYSTEMS, and CHRIS SMITH, CYNTHIA OWENS, LATONYA CAIN, and BRIAN BURNETT**
Defendants.

---

Law Offices of Ward & Stachurski, PLLC
Veronica L. Stachurski (P85110)
*Attorneys for Plaintiff*
7743 Grand River Ave.
Suite 103
Brighton, MI 48114
(517) 347-8100
Office@WSadvocates.com

---

## **JURY DEMAND**

NOW COMES Plaintiff, by and through her Attorney, to request a trial by jury.

Dated: October 09, 2026

*/s/ Veronica L. Stachurski*
Veronica L. Stachurski (P85110)
Law Offices of Ward & Stachurski, PLLC
Attorneys for Plaintiff
7743 Grand River Ave., Suite 103
Brighton, Michigan 48114
(517) 347 – 8100
Office@WSadvocates.com